UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

SECRET CONSULTING INC. D/B/A         CASE NO. 9:24-cv-81591-AHS
WATCH TRADING ACADEMY, a
Florida for-profit corporation,

Plaintiff,

v.

MARK FOTOHABADI, an individual; and
MINAMARK COMPANY d/b/a LIDO WATCH
CLUB, a California for-profit corporation,

Defendants.
_____/

## DEFENDANTS' MOTION FOR SUMMARY FINAL JUDGMENT OR PARTIAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Defendants, MARK FOTOHABADI and MINAMARK COMPANY, pursuant to Federal Rule of Civil Procedure 56, move for final or partial summary judgment against Plaintiff, SECRET CONSULTING INC. D/B/A WATCH TRADING ACADEMY, and state:

### INTRODUCTION

Either final summary judgment or partial summary judgment should be entered against Secret Consulting and in favor of the Defendants. Secret Consulting has sued the Defendants in the wrong jurisdiction in an attempt to apply the wrong law. Even if Secret Consulting could apply Florida law to this dispute (it cannot), that application would nevertheless require judgment against them because they are proceeding on an invalid and unenforceable contract. And, finally, even if Secret Consulting had a valid and enforceable contract, Secret Consulting has not computed its damages as of the date of filing this motion and has no means to do so

1

because the damages are remote and speculative. Throughout its corporate representative deposition, Secret Consulting admits as much.

## LEGAL STANDARD

Summary judgment may be entered in any case where "there is no genuine issue as to any material fact" and the moving party is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This Court views the evidence and factual inferences reasonably drawn from therefrom "in the light most favorable" to the nonmovant. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

## ARGUMENT

**1. This dispute should not have been filed in Florida and Florida law does not apply to the case.**

Florida law does not apply to this dispute and the case should not have been filed in this District. Secret Consulting has already failed to procure a preliminary injunction both in state court and before this Court. There are four central problems for Secret Consulting in attempting to bring this action in Florida or under Florida law: (1) the contract is invalid under the strong public policy of California prohibiting non-solicitation clauses; (2) California's strong public policy against post-termination restraints on trade prevents the proffered means of enforcement; (3) the contract, and not the attempted remedy in the cause of action, is violative of and subject to California law, such that any question of severability would, also, be a question of California law; and (4) even under the test set by this Court in the preliminary injunction order, the motion for summary judgment necessitates reliance on California law because the motion seeks to prohibit not only the use of client lists or confidential information, but also the solicitation of clients by any means. This problem infects the entire dispute, given that Secret Consulting seeks

to enforce a contract pursuant to Florida law, seeks injunctive relief under two Florida Statutes, and seeks statutory damages pursuant to Florida Statute.

Public policy dictates that California law applies. *See Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1341 (11th Cir. 2013). As this Court has previously noted, the Defendants are and have been residents and citizens of California, not Florida. [*See* D.E. 16, p. 2.] And, as this Court has noted, Section 925(a) of the California Labor Code protects the Defendants from contracts resembling the contract issue:

> An employer[] shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following: (1) Require the employee to adjudicate outside of California a claim arising in California [or] (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California."

[D.E. 16, p. 2] (Footnote omitted.) This Court explained that, if the "contract violates Section 925(a) of the Code, the relevant provisions are voidable by the employee and the matter must be litigated under California law in a California court." [D.E. 16, p. 3.] This Court reasoned that discovery and further briefing would reveal whether California law applies. [D.E. 16, pp. 3-5.] As this Court explained, the pertinent question is "whether the Plaintiff now seeks to hold the Defendants liable *only* for the use of confidential information and client lists, or whether the Plaintiff seeks to hold the Defendants liable for *more*." [D.E. 16, pp. 3-4.]

Secret Consulting thereafter filed a motion for summary judgment that, itself, answers this question and requires application of California law. Secret Consulting's motion seeks to hold Defendants liable not only for use of client lists and confidential information, but also for any solicitation of clients. [D.E. 24, p. 10.] Secret Consulting also seeks to hold Defendants liable for injunctive relief. [D.E. 24, p. 4; D.E. 24, p. 9]

3

Moreover, California Business and Professional Code § 16600.1(a) makes it unlawful for an employer to include a noncompete clause in an employment contract or otherwise require an employee to enter into a noncompete agreement as a condition to employment. A violation of section 16600.1(a) constitutes "an act of unfair competition within the meaning of" enumerated California law. Cal Bus & Prof Code § 16600.1(c). California "unquestionably has a 'settled and legislative policy in favor of open competition and employee mobility,' embodied in Cal. Bus. & Prof. Code §§ 16600, 16600.1, and 16600.5." *Draftkings Inc. v. Hermalyn*, 732 F.Supp.3d 85, 108-09 (D. Mass. 2024) (quoting *Oxford Global Resources, LLC v. Hernandez*, 480 Mass. 462, 469 (Mass. 2018), itself citing *Edwards v. Arthur Andersen LLP*, 44 Cla. 4th 937, 945-46 (Cal. 2008)). The law "protects Californians and ensures that every citizen shall retain the right to pursue any lawful employment and enterprise of their choice." *Edwards*, 44 Cal. 4th at 945-46. (internal quotations omitted.).

As the California Supreme Court in *Edwards* explained:

> We conclude that Andersen's noncompetition agreement was invalid. As the Court of Appeal observed, "The first challenged clause prohibited Edwards, for an 18-month period, from performing professional services of the type he had provided while at Andersen, for any client on whose account he had worked during 18 months prior to his termination. The second challenged clause prohibited Edwards, for a year after termination, from 'soliciting,' defined by the agreement as providing professional services to any client of Andersen's Los Angeles office." The agreement restricted Edwards from performing work for Andersen's Los Angeles clients and therefore restricted his ability to practice his accounting profession . . . . The noncompetition agreement that Edwards was required to sign before commencing employment with Andersen was therefore invalid because it restrained his ability to practice his profession . . . .

*Id*. at 948. (internal citations omitted.)

Any restraint following an employee's termination are struck down without further analysis:

> As we read *Ixchel*, there are certain noncompetition agreements that are so antithetical to section 16600's purpose that they are invalid per se. For example, restraints following an employee's termination or the sale of an entire business interest (absent an applicable exception) unquestionably interfere with a person's right to engage in an occupation or business of their choosing. Thus, they are struck down without further analysis.

*Samuelian v. Life Genereations Healthcare, LLC*, 104 Cal. App. 5th 331, 355 (Cal. Dist. Ct. App. 2024).

As it has done throughout these proceedings, Secret Consulting will likely cite *John F. Matull & Assocs., Inc. v. Cloutier*, 194 Cal. App. 3d 1049, 1054 (Cal. Ct. App. 1987); *Fields v. QSP, Inc.*, 2012 U.S. Dist. LEXIS 78001 (C.D. Cal. June 4, 2012); *Latona v. Aetna U.S. Healthcare, Inc.*, 82 F.Supp.2d 1089, 1096 (C.D. Cal. 1999); and *Loral Corp. v. Moyes*, 174 Cal. App. 3d 268, 276 (Cal. Ct. App. 1985) in arguing that the clause at issue does not contravene California law. The Defendants will discuss each case, in turn.

First, *John F. Matull & Assocs., Inc.*, 194 Cal. App. At 1054 predates both *Edwards* and *Samuelian*. The restrictions in the contract at issue fall within the confines of those later cases, where a post-termination restriction operates to interfere with Mr. Fotohabadi's ability to buy, sell, and trade watches.

Second, *Fields v. QSP, Inc.*, 2012 U.S. Dist. LEXIS 78001, also predates *Samuelian*. But, even applying *Fields*, the court reasoned that portions of the agreement were void and found that the remainder of the agreement could only be enforceable if it could be severed from the offending provisions. *Id*. at * 27-28. Either way, California law would need to be applied because there is no such severance under Florida law; section 16600.1 is not a Florida statute. The

determination of whether the offending provisions could be severed are a matter of California law, because it presupposes a breach of California law in the drafting of a restraint against trade.

Similarly, *Latona*, 82 F.Supp.2d at 1096 cannot prevent judgment against Secret Consulting, either. The opinion reasons that Section 16600 states "Every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." This protection against restraint of employment qualifies as a strong public policy in California. *Id*. at 1093-94. At bottom, Secret Consulting's position is that its contract that is violative of California law should not be subject to application of that law because it also has a trade secrets prohibition.

> This attempt is not countenanced under California law, either:
>
>> The Court notes at this juncture that defendant's argument, that the Agreement cannot violate public policy because even if unenforceable, it is simply a nullity, ignores the realities of the marketplace. As between Aetna and an individual employee, the company is in an infinitely better position to acquaint itself with the applicable laws, and to know whether the non-compete clause violates section 16600. Employees, having no reason to familiarize themselves with the specifics of California's employment law, will tend to assume that the contractual terms proposed by their employer (especially one of Aetna's magnitude) are legal, if draconian. Furthermore, even if they strongly suspect that a non-compete clause is unenforceable, such employees will be reluctant to challenge the legality of the contractual terms and risk the deployment of Aetna's considerable legal resources against them. Thus, the in terrorem effect of the Agreement will tend to secure employee compliance with its illegal terms in the vast majority of cases. Prospective future employers, too, may be reluctant to hire Aetna's workers; even if secure in the knowledge of the unenforceability of Aetna's non-compete clause, these employers may well wish to avoid the expense and energy of defending a lawsuit in which they are likely to be joined . . . . In this way Aetna will be able to stifle marketplace competition for its human capital. This outcome is clearly in derogation of the fundamental public policy interests that section 16600 was intended to advance.

*Latona*, 82 F.Supp.2d at 1096-97. (internal citations omitted.) It is the illegal contract forming the basis of Secret Consulting's claim, and not merely the manner in which Secret Consulting is attempting to tailor its use of that contract in this case subsequent to this Court's order denying its request for a preliminary injunction, that is cause for California's concern in the matter. *See id*.

Finally, *Loral Corp.*, 174 Cal. App. 3d at *passim* has been questioned in *AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 938 (Cal Ct. App. 2018); *Web Design & Consulting Servs. v. Aragon*, 2025 U.S. Dist. LEXIS 59749 (D. Maine Mar. 31, 2025); *Olson v. World Fin. Grp. Ins. Agency, LLC*, 2024 U.S. Dist. LEXIS 200207 (N.D. Cal. Nov. 4, 2024); and *Barker v. Insight Global, LLC*, 2019 U.S. Dist. LEXIS 6523 (N.D. Cal. Jan. 11, 2019). In *AMN Healthcare, Inc.*, 28 Cal. App. 5th at 938, the court went out of its way to note the impact of *Edwards* on *Loral Corp.* and questioned whether *Loral Corp.* remains good law because of *Edwards*. *See also Olson*, 2024 U.S. Dist. LEXIS at *10-11 (collecting cases).

Even when drawing all facts and inferences in favor of Secret Consulting, this Court is left with a post-termination restraint on trade that is inarguably violative of California law, coupled with Secret Consulting's attempt to enforce the contract containing the offending provision, which, under California law, would be subject to a test for severance of that provision under a California statute. Secret Consulting cannot accomplish that task by suing California Defendants under that California contract in Florida or by use of Florida statutes.

Based on the foregoing, summary judgment should be entered against Secret Consulting on all counts and in favor of the Defendants.

2. **Judgment should be entered against Secret Consulting on its counts for breach of contract and injunctive relief under section 542.335, Florida Statutes because both counts fail where there is no valid or enforceable contract.**

Secret Consulting has filed suit, claiming that Mr. Fotohabadi has made use of confidential information or a client list for the purposes of improper solicitation. The clause at issue provides:

> For twelve (12) months effective upon the termination of the Agreement, Contractor will not directly or indirectly, within the Continental United States, solicit or otherwise perform any work or provide any services with or involving, directly or indirectly, any [of Plaintiff's] customers or suppliers.

[D.E. 1-1, p. 22.]

However, if California law does not apply, then, even under Florida law, Secret Consulting cannot rely on this clause for three reasons. First, there is no contract because there was no consideration given by Secret Consulting. Second, there is no contract because the contract is illusory. And third, the term "customers" does not apply to any relationship Mr. Fotohabadi had with any of the watch traders, as conceded by Secret Consulting at its corporate representative deposition.

**First,** there is no contract because there was no consideration given by Secret Consulting. To attempt to enforce a contract, "a plaintiff must first show a valid contract." *Gotel v. Carter*, 2022 U.S. App. LEXIS 4404, at * 8-9 (11th Cir. Feb. 14, 2022). One of the essential elements of any contract is consideration. *Id*. Applying Florida law, the contract's provisions are construed against the drafter, who here is admittedly Secret Consulting. *See Britt Green Trucking v. FedEx Nat'l LTL, Inc.*, 511 Fed.Appx. 848, 851 (11th Cir. 2013). Where a contract is executed subsequent to an initial agreement and was "not part of the same transaction," it must be supported by new consideration. *Brewfab, LLC v. 3 Delta, Inc.*, 2022 U.S. App. LEXIS 28429, at

8

*12-13 (11th Cir. Oct. 13, 2022). Performance of a pre-existing obligation cannot constitute valid consideration. *Barnes v. Beaumont*, 70 So. 2d 560, 563 (Fla. 1954) (reasoning, "Where the consideration of a contract is past, no valid and binding contract comes into existence").

Here, there can be no consideration. Secret Consulting concedes that Mr. Fotohabadi was already appointed by Secret Consulting prior to execution of the contract. Secret Consulting concedes that "Appendix A", which would outline the scope of Mr. Fotohabadi's duties, is not only missing but was never drafted. [D.E. 33-1, pp. 110-111, 113-114.] The contract does not define compensation for Mr. Fotohabadi, and Secret Consulting has testified that it could unilaterally change commission percentages at any time and for any reason, or for no reason at all. [D.E. 33-1, p. 115.].

Perhaps most notably, Secret Consulting admitted that Mr. Fotohabadi was only required to execute the contract under threat and in order to receive payment for services Mr. Fotohabadi had already performed and had already earned:

> Q.  Okay. So at the time, you say the threat of having his bonus withheld. So at that time when he was presented the agreement, whatever that promotion was, he had already earned that bonus?
>
> A.  He had already done the sales for that bonus. That's correct. Yeah.

[D.E. 33-1, p. 67. *See also* D.E. 33-1, p. 71; D.E. 119-120.]

The payment was a single $1,500.00 bonus check. [D.E. 25-2, p. 80.] [*See also* D.E. 25-2, pp. 107-108.] The check was made payable to Lido Watch Club, not Mr. Fotohabadi. [D.E. 33-1, p. 64.]

The conclusion on this point is inexorably tied to Secret Consulting's concession. The parties already had a relationship and there was no new consideration for the subject contract,

9

given that Mr. Fotohabadi had already, previously earned the $1,500.00 check. *See Brewfab, LLC*, 2022 U.S. App. LEXIS 28429, at *12-13; *Barnes*, 70 So. 2d at 563.

**Second**, there is no contract because the contract is illusory. A contract is illusory where "one party gives as consideration a promise that is so insubstantial as to impose no obligation, rendering the contract unenforceable." *Sweet Additions Ingredient Processors, LLC v. Meelunie Am., Inc.*, 2025 U.S. App. LEXIS 13415, at * 30-31 (11th Cir. June 2, 2025)(internal quotations omitted.) In "context, that means a contract is illusory if" Secret Consulting "has the sole discretion to walk away from" paying Mr. Fotohabadi for his services. *See id*. And that is precisely what the contract provides, as well as what Secret Consulting, itself, testified to. The contract is thus illusory because Secret Consulting "retains to itself the option of fulfilling or declining to fulfill its obligations under the contract . . . ." *See Rojas v. Univ. of Fla. Bd. of Trs.*, 2025 Fla. LEXIS 1189, at *13 (Fla. July 17, 2025).

Secret Consulting testified that Mr. Fotohabadi's compensation was not provided for in the contract. Compensation is the only possible consideration provided by Secret Consulting; every other promise in the contract is provided by Mr. Fotohabadi. The entire clause relating to compensation provides, "For all services to rendered by you during the term hereof and in consideration of your covenants herein, SC shall pay you performance based on sales made." [D.E. 1-1, p. 19.] There is no mechanism to determine what that means or to limit Secret Consulting's ability to pay Mr. Fotohabadi nothing at all, and Secret Consulting testified that it had the unilateral ability to change whatever Mr. Fotohabadi's commission percentage was at any time and for any reason. [D.E. 33-1, p. 115.] Secret Consulting imposed an obligation on itself that was so slight it constituted no obligation at all. *See Sweet Additions Ingredient Processors, LLC*, 2025 U.S. App. LEXIS 13415, at *30-31.

10

**Third,** the term "customers" does not apply to any relationship Mr. Fotohabadi had with any of the watch traders, as conceded by Secret Consulting at its corporate representative deposition. The clause at issue provides:

> For twelve (12) months effective upon the termination of the Agreement, Contractor will not directly or indirectly, within the Continental United States, solicit or otherwise perform any work or provide any services with or involving, directly or indirectly, any [of Plaintiff's] customers or suppliers.

[D.E. 20-1, p. 20.]

The clause only applies to "customers or suppliers." [*See* D.E. 20-1, p. 20.] There is no allegation that Mr. Fotohabadi engaged in prohibited activity with a supplier. Thus, only "customers" are at issue. Under the contract, "Customer" is a defined term:

> Any individual or company who Contractor contacted or served, or for whom Contractor supervised contact or service regarding the actual purchase of SC products or services ***during the period of Contractor's employment with the Company***. Likewise, "Customer" shall include any potential customer or prospect of SC that SC exerted significant efforts to do business with and/or any potential customer or prospect that SC exchanged a proposal or agreement with, that Contractor directly or indirectly contacted, knew of, obtained information about, or was otherwise involved in or with in any way, ***during the last twelve (12) months of his employment with SC***.

[D.E. 20-1, p. 20.] (Emphasis supplied.)

That clause is construed against Secret Consulting. *See Britt Green Trucking v. FedEx Nat'l LTL, Inc.*, 511 Fed.Appx. 848, 851 (11th Cir. 2013). Respectfully, in its efforts to misclassify employees as independent contractors for the reasons companies typically engage in that practice, Secret Consulting has written itself out of enforcement of this clause with respect to Mr. Fotohabadi and has, in fact, conceded that it cannot enforce the clause. Secret Consulting admitted that, in order for someone to be considered a customer for purposes of the non-

11

competition clause, Mr. Fotohabadi would have had to have contacted, served, or supervised the contact or service of that individual "during the period of" his "employment with the company." [D.E. 33-1, p. 144.] Secret Consulting also admits that there was no such "period of employment" for Mr. Fotohabadi. [D.E. 33-1, pp. 144-145.]

Based on the foregoing, even if Florida law applies to this dispute, there would first need to be a non-compete contract in order for Secret Consulting to enforce that contract pursuant to statute. There being no such contract, no enforcement can occur.

3. **This Court should enter summary judgment against Secret Consulting and in favor of the Defendants on the counts for breach of contract and violation of the Uniform Trade Secrets Act because Secret Consulting has no evidence of damages other than remote, speculative guesswork.**

Secret Consulting has alleged that it has suffered damages as a direct result of Mr. Fotohabadi's breach of the contract, including actual damages. [D.E. 20, pp. 9-10; D.E. 20, pp. 13-14.] Respectfully, there is no evidence to support this element of Secret Consulting's claims for breach of contract or the purported violation of the Uniform Trade Secrets Act.

Secret Consulting cannot compute its damages. Secret Consulting was required to provide a computation of its damages during the initial disclosure phase of litigation. More is required than a mere dollar amount to satisfy the computation requirement. *See BeSpoke Studio, Inc. v. Gabbe Priv. Ltd.*, 348 F.R.D. 262, 266 & n. 3 (N.D. Fla. 2024). Speculative "lost profits claims are not recoverable." *Kane v. Shearson Lehman Hutton, Inc.*, 916 F.2d 643, 647 (11th Cir. 1990). The loss must be provable with a reasonable degree of certainty. *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1177 (11th Cir. 2002). In fact, no speculative damages are recoverable in a breach of contract action. *Stein v. Paradigm Mirasol, LLC*, 586 F.3d 849, 856 & n. 3 (11th Cir. 2009).

Secret Consulting's corporate representative testified as to the issue of damages at the corporate representative deposition in this matter. [D.E. 33-1.] Mr. Ghadimipour reviewed only the documents that had been previously produced when preparing for his corporate representative deposition. [D.E. 33-1, p. 24.] Mr. Ghadimipour met with his attorneys, one time, the day before the deposition. [D.E. 33-1, p. 23.] Mr. Ghadimipour failed to speak with anyone from Secret Consulting, other than his lawyers, in preparation for the deposition. [D.E. 33-1, p. 25.] Mr. Ghadimipour and one independent contractor discussed the fact that a deposition was set, but not the subject matter of the deposition. [D.E. 33-1, p. 25.] Mr. Ghadimipour had not reviewed All Social Sales' response to the subpoena served on it in this case. [D.E. 33-1, p. 25.] Mr. Ghadimipour did not discuss the deposition with any current or former clients. [D.E. 33-1, p. 26.] Although many of the topics included interactions with the sales team and use of HubSpot, Mr. Ghadimipour never uses HubSpot and does not "interact with any of the day-to-day operations of the sales team." [D.E. 33-1, p. 27.]

When asked what services Mr. Fotohabadi provided on behalf of Secret Consulting, Mr. Ghadimipour equivocated: "And I believe he had the ability to refer any products and services to Exotic Car Hacks if needed. And I believe he was also serving as a coach in our program called Fast Track Coaching." [D.E. 33-1, pp. 84-85.] Mr. Ghadimipour lacked other knowledge regarding Mr. Fotohabadi's relationship with Secret Consulting, as well. [*See* D.E. 33-1, p. 85; D.E. 33-1, p. 92; D.E. 33-1, pp. 109-110; D.E. 33-1, p. 114; D.E. 33-1, p. 115; D.E. 33-1, p. 116; D.E. 33-1, p. 137; D.E. 33-1, p. 139.] And Mr. Fotohabadi referred to certain corporate representative deposition questions an "an Alysa question." [*See* D.E. 33-1, p. 94; D.E. 33-1, p. 95; D.E. 33-1, pp. 166-167.] Notably, Mr. Ghadimipour explicitly testified that he did not have a damages figure for the claim. [D.E. 33-1, pp. 203-205. *See also* D.E. 33-1, p. 214.]

13

Reference to this testimony is important for purposes of this motion because, as the corporate representative of Secret Consulting, the company speaks through Mr. Ghadimipour. *Topp, Inc. v. Uniden Am. Corp.*, 2007 U.S. Dist. LEXIS 88752, at *5-6 (S.D. Fla. Nov. 28, 2007). And, where Mr. Ghadimipour does not have the answer to a question because he failed to prepare to adequately provide one, Secret Consulting is bound by his answers. *See Wright v. Cleveland Clinic Fla.*, 2021 U.S. Dist. LEXIS 258660, at *11 (S.D. Fla. Oct. 12, 2021).

Secret Consulting, through its corporate representative, has testified that it cannot provide evidence sufficient to meet the damages element of its claims for breach of contract or violation of the Uniform Trade Secrets Act. When pressed on each potential category of damages, Secret Consulting admitted for substantially all of them that it either was not damaged or was purely speculating that it might have been damaged. Further, Secret Consulting has no other way to prove this element of its claims. Secret Consulting has failed to engage an expert witness to create or explain a damages model, and the deadline to have disclosed an expert passed nearly three months ago.

Mr. Ghadimipour agreed that Mr. Fotohabadi could not have accessed Secret Consulting's client list after August 15, 2024, having lost access to it, which would make any claim of causation speculative. [D.E. 33-1, pp. 158-159.] And, with regard to whether Mr. Fotohabadi had Facebook conversations on his phone, Mr. Ghadimipour explained that he was just assuming that such was the case, which again would hamper any ability to prove causation. [*See* D.E. 33-1, pp. 163-164.] Further, with regard to the allegations that Mr. Fotohabadi retained training materials, Mr. Ghadimipour admits that there were no such materials, outside of digital course access that had been revoked. [D.E. 33-1, p. 177.] And Mr. Ghadimipour concedes that, with regard to specific customers it claims caused it a loss of business, they all remained

14

customers and Secret Consulting lost, in fact, no business at all. [D.E. 33-1, pp. 180-182.] Likewise, when pressed on whether Mr. Fotohabadi continued to hold himself out as being associated with Secret Consulting, Mr. Ghadimipour conceded that he had no personal knowledge of that and was operating solely based on assumptions. [D.E. 33-1, pp. 186-187.]

When discussing Secret Consulting's damages, Mr. Ghadimipour admitted that a portion of the damages were not because of Mr. Fotohabadi's alleged breaches, but rather occurred because Secret Consulting could no longer market Mr. Fotohabadi or his services once he was terminated. [D.E. 33-1, pp. 216-218.] That marketing was the entire basis of the "price erosion" theory advanced by Secret Consulting. [D.E. 33-1, p. 225.] And that was also the entire basis of Secret Consulting's lost profits theory, which Secret Consulting admitted is duplicated in its lost sales theory. [D.E. 33-1, pp. 216-217.] In other words, Secret Consulting has admitted that there is no support for the claim that any breach of the contract or violation of the Uniform Trade Secrets Act was the cause of any lost profits or lost sales damages.

Secret Consulting admitted that there were no damages pursuant to its business disruption theory as a result of solicitation:

> Q. Okay. So there was no disruption as a result of the solicitation?
>
> A. No, because we put an end to it with the Facebook post.

[D.E. 33-1, p. 224.] There were no expenses incurred in conducting its investigation, either. [D.E. 33-1, pp. 224-225.] Secret Consulting agreed that there were no damages relating to software costs. [D.E. 33-1, pp. 211-212.]

As to its cause of action for breach of contract, Secret Consulting could not state that there was more than $5,000 potentially lost as a result of one individual not signing up for future coaching; the corporate representative stated, "I'm not sure." [D.E. 33-1, p. 212.] And, with

15

respect to that individual, the corporate representative did not know who the person was. [D.E. 33-1, p. 211.] Secret Consulting stated that it gave refunds to individuals but did not know the amount of the refunds. [*See* D.E. 33-1, pp. 213-214.]

In Secret Consulting's answer to Interrogatory number 5, it stated that it had $200,000 in losses. [*See* D.E. 33-1, p. 214.] Secret Consulting had no idea what that figure was based on: "I don't have that information, like I said. And it even says here, I think, that we're still compiling it. But I'm happy to get legal counsel to give you a copy once we have a final number." [D.E. 33-1, p. 214.] No documents or other evidentiary material was identified for inspection and copying to support this computation of damages are required by Federal Rule of Civil Procedure 26(a)(1)(A)(iii). And, at the summary judgment phase of litigation, Secret Consulting still has no means by which to compute its damages.

Presumably, part of that $200,000 claim would have been based on an assumption that people believed they were being deceived and thus would not sing up for Secret Consulting's program, stating, "it's fair assumption to assume that." [D.E. 33-1, p. 220.] Secret Consulting doubled down on the speculative nature of this theory, stating, "I'm assuming that people chose to not jump on our program because of these statements that were circulating in the community for the three months that followed these issues." [D.E. 33-1, p. 220.]

So, too, did Secret Consulting concede that it had nothing other than a speculative claim for reputational damages. [D.E. 33-1, pp. 220-221.] Secret Consulting also admitted that, of the six people it claimed were being solicited and told Secret Consulting was taking advantage of them, Secret Consulting had no evidence that anything like that happened with respect to five of those six people. [D.E. 33-1, p. 223.]

16

Secret Consulting also could not describe or calculate the damages it was seeking for violation of the Uniform Trade Secrets Act:

> Q. I'm going to go back to Exhibit Number 7. So Count number III, which is a claim for money damages for violation of the Uniform Trade Secrets Act.
>
> Can you tell me what damages Secret is seeking with respect to Count III?
>
> A. Again, I don't have the dollar of any damages.
>
> Q. Do you know any types of categories of damages that Secret is seeking with relation to Count III?
>
> A. No. That would be a question for counsel.

[D.E. 33-1, p. 225. *See also* D.E. 33-1, p. 228.]

Secret Consulting has not computed its damages. It cannot, because those damages are speculative well beyond any acceptable level. Damages are an element of Secret Consulting's claims for breach of contract and violation of the Uniform Trade Secrets Act. Summary judgment should be entered against Secret Consulting and in favor of the Defendants as to those counts.

## CONCLUSION

Based on the foregoing, this Honorable Court should enter summary final judgment or partial summary judgment against Secret Consulting and in favor of the Defendants.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 1, 2025, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using CM/ECF and that the foregoing documents being served this day on all counsel or parties of record via transmission of a Notice of Electronic Filing generated by CM/ECF.

By: */s/ Valerie Barnhart*
Valerie Barnhart, Esq.
Florida Bar No. 88549
valerie@barnhartfirm.com
**BARNHART LAW FIRM**
12555 Orange Drive, Second Floor
Davie, Florida 33330
Telephone: 954-526-1814
